1  CDF LABOR LAW LLP
      Dawn M. Irizarry, State Bar No. 223303
2     dirizarry@cdflaborlaw.com
      Carolina A. Schwalbach, State Bar No. 280783
3     cschwalbach@cdflaborlaw.com
   707 Wilshire Boulevard, Suite 5150
4  Los Angeles, CA 90017
   Telephone: (213) 612-6300
5
   Attorneys for Defendant
6  DELTA AIR LINES, INC.,
   (erroneously sued as "DELTA AIRLINES, INC.")
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | KENNA DONORA PORTER,              ) Case No.
                                       )
12 |       Plaintiff,                  ) [Removed from Los Angeles Superior
         vs.                           ) Court, Case No. 21STCV41986]
13 |                                   )
   | DELTA AIRLINES, INC., a           ) **DEFENDANT'S NOTICE OF**
14 | corporation; PHIL LINGARD, an     ) **REMOVAL OF CIVIL ACTION TO**
   | individual, and DOES 1-10, Inclusive, ) **UNITED STATES DISTRICT**
15 |                                   ) **COURT PURSUANT TO 28 U.S.C.**
   |       Defendants.                 ) **§§ 1332(a), 1441(a) AND 1446**
16 |                                   )
                                       ) Filed concurrently with:
17                                     ) -Civil Cover Sheet
                                       ) -Decl. of Dawn M. Irizarry
18                                     ) -Decl. of Ashley Rangel
                                       ) -Decl. of Phil Lingard
19                                     ) -Notice of Interested Parties
                                       ) -Corporate Disclosure Statement
20 |_____)

21

22

23

24

25

26

27

28

**TO THE CLERK OF THE COURT, PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant DELTA AIR LINES, INC., (erroneously sued as "DELTA AIRLINES, INC.") ("Delta"), through its undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California based on the original jurisdiction of this Court under 28 United States Code ("U.S.C") sections 1332(a), 1441 and 1446. In support of this removal, Delta states as follows:

## I. BACKGROUND

1. On or about November 15, 2021, Plaintiff commenced this action by filing an unverified Complaint in the Superior Court of California, County of Los Angeles, captioned *Kenna Donora Porter v. Delta Airlines, Inc., a corporation; Phil Lingard, an individual, and DOES 1-10, Inclusive,* and bearing the case number 21STCV41986 (the "Action"). True and correct copies of all pleadings, process, and orders, and any other documents on file with the State Court in this Action are attached to this Notice as Exhibit A.

2. As of the date of this removal, Delta has been served with the Summons and Complaint in this matter but individual defendant Phil Lingard has not been served with the Summons and Complaint in this matter. [Exhibit A, Proof of Service; Declaration of Dawn M. Irizarry ("Irizarry Decl.") ¶ 2; Declaration of Phil Lingard filed concurrently herewith ("Lingard Decl.") ¶ 4.]

3. In the Complaint, plaintiff Kenna Donora Porter ("Plaintiff") asserts claims for: (1) disability discrimination – failure to make reasonable accommodation (FEHA); (2) disability discrimination (FEHA), (3) retaliation (FEHA), (4) wrongful termination in violation of public policy, (5) failure to remedy and/or prevent discrimination and retaliation, and (6) intentional infliction of emotional distress. [*See* Complaint ("Compl.") generally.]

4. As of the time of this removal, Delta has not filed a response, or otherwise appeared in the Action. (Irizarry Decl. ¶ 2.) The following is a short and plain statement of the grounds for removal:

## II. JURISDICTION

5. This court has original jurisdiction over this Action under 28 U.S.C. sections 1332(a), 1441 and 1446 as this dispute is between citizens of different states and the amount in controversy is greater than $75,000, as set forth more fully below.

## III. SATISFACTION OF THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446

6. In accordance with 28 U.S.C. section 1446(a), this Notice is filed in the District Court of the United States in which the action is pending. The Superior Court of California, County of Los Angeles is located within the Central District of California. Therefore, venue is proper in this Court pursuant to 28 U.S.C. section 84(a) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

7. Delta was served with the Summons and Complaint in this Action on December 3, 2021. (Irizarry Decl. ¶ 2.) Therefore, Delta's Notice of Removal is timely under 28 U.S.C. §1446(b)(1). *See Novak v. Bank of New York Mellon Tr. Co., NA.*, 783 F.3d 910, 911 (1st Cir. 2015) ("service generally not a prerequisite for removal" and a "defendant may remove a state-court action to federal court any time after the lawsuit is filed but before the statutorily-defined period for removal ends").

8. In accordance with 28 U.S.C. section 1446(d), a copy of this Notice is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in the County of Los Angeles and with the Clerk of the Central District of California. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

///
///

## IV. REMOVAL IS PROPER BECAUSE THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §1332 AND §1441.

9. Plaintiff's claims, as alleged in the Complaint, are removable under 28 U.S.C. section 1332(a) (diversity of citizenship). Diversity jurisdiction exists where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. *Id.*

### A. The Parties Are Completely Diverse.

10. Traditional diversity jurisdiction requires that all plaintiffs be of different citizenship than all defendants. *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

#### 1. Phil Lingard Is A "Sham" Defendant.

11. A non-diverse party named in a state court action may be disregarded if the non-diverse party's joinder is a "sham," or "fraudulent," such that no possible cause of action has been stated against that party. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). The term "fraudulent joinder" is a term of art; "it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990); *see also McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In determining fraudulent joinder, the court may "pierce the pleadings" and consider summary judgment-type evidence in the records. *Travis v. Irby*, 326 F.3d 644, 648-649 (5th Cir. 2003); *see also McCabe*, 811 F.2d at 1339; *Casias v. Wal-mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) ("The court may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'")

12. Plaintiff named Mr. Lingard as a defendant as to causes of action for: (1) disability discrimination - failure to make reasonable accommodation in violation of FEHA; (2) disability discrimination - wrongful termination in violation of FEHA;

(3) retaliation in violation of FEHA; (4) intentional infliction of emotional distress; and (5) defamation. (*See* Complaint ¶¶ 25-59; 73-78). As a matter of law, however, none of these five causes of action may be brought against an individual defendant acting within the scope of his managerial duties, and the allegations on the face of Plaintiff's Complaint refer **only** to activities which fell within the scope of management responsibilities.

13. Mr. Lingard is a Manager, LAX Support for Delta. In this role, Mr. Lingard is tasked with facilitating the return to work process for employees at the Los Angeles airport whose leave request is either denied or where the leave has come to an end. (Lingard Decl. ¶ 2.) Mr. Lingard did not supervise Plaintiff, nor did he direct and/or control Plaintiff's job duties and responsibilities. (Lingard Decl. ¶ 3.) In fact, Mr. Lingard has never met Plaintiff. (Lingard Decl. ¶ 3.) All actions Mr. Lingard took with regard to Plaintiff, were related to Mr. Lingard's role as a Manager, LAX Support for Delta. (Lingard Decl. ¶ 2-3.) As such, Plaintiff has not stated a possible cause of action against Mr. Lingard, and he is a "sham" defendant, whose citizenship cannot be considered for purposes of determining diversity jurisdiction in this case.

     **a.** **Plaintiff's Discrimination and Retaliation Causes of Action Are Not Viable Against Mr. Lingard.**

14. In her 'Complaint, Plaintiff alleges that Mr. Lingard "aided and abetted" Delta's alleged discrimination and retaliation (Complaint ¶¶ 33, 45, and 55). More specifically, Plaintiff's retaliation and discrimination claims against Mr. Lingard are premised on her *sole* allegation that, on June 30, 2021, Mr. Lingard sent Plaintiff a letter "threatening termination on July 3, 2021, if she did not resign." (Complaint ¶¶ 21, 25, 38, and 50).

15. Plaintiff is precluded as a matter of law from recovery against Mr. Lingard for the same claims of discrimination and retaliation that Plaintiff brings against Delta. Indeed, in *Reno v Baird*, 18 Cal.4th 640 (1998), *superseded on other grounds*, the California Supreme Court held that only an employer, and not individual

employees, can be held liable for discrimination under FEHA. *Id*. at 644 ("The FEHA, however, prohibits only 'an employer' from engaging in improper discrimination."). In so holding the court explained that ""[a]n individual supervisory employee cannot, however, refrain from engaging in the type of conduct which could later give rise to a discrimination claim. Making personnel decisions is an inherent and unavoidable part of the supervisory function. Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties." *Id*. at 646.  The *Reno* court made explicitly clear that this same logic extended to prohibit individual liability for claims of wrongful discharge as well. *Id*. at 643 ("We conclude that the FEHA, like similar federal statutes, allows persons to sue and hold liable their employers, but not individuals. Our conclusion also applies to common law actions for wrongful discharge.").

16. Since the *Reno* decision, it has been well-settled law in California that individual employees cannot be held personally liable for claims of discrimination, retaliation or wrongful termination under FEHA based on their actions in carrying out personnel-related decisions for which the employer, as an entity, is liable. *See, e.g., Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1167 (2008) (holding nonemployer individuals may not be held personally liable under FEHA for their role in retaliation and noting "corporate employment decisions are often collective, and that it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision…."); *see also Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal. App. 4th 32 (3d Dist. 2000) (refusing to impose individual liability for alleged wrongful discharge in violation of public policy claim); *see also Jacobs v. Universal Dev. Corp.*, 53 Cal. App. 4th 692, 697 (4th Dist. 1997) ("Only an employer can be liable for tortious discharge, and fellow employees cannot be held accountable for tortious discharge on a conspiracy theory.").

17. As such, Plaintiff is precluded as a matter of law from recovery against Mr. Lingard for the same claims of discrimination and retaliation that Plaintiff brings

against Delta. *Woodson v. California*, No. 2:15-cv-01206-MCE-CKD, 2016 U.S. Dist. LEXIS 16496, at *13-14 (E.D. Cal. Feb. 10, 2016) ("Individual supervisors are not liable under FEHA for alleged discriminatory acts."); *see Moore v. Cal. Dep't of Corr. & Rehab.*, No. CV F 10-1165 LJO SMS, 2011 U.S. Dist. LEXIS 62852, at *33 (E.D. Cal. June 13, 2011) ("Defendants are correct that the individual defendants are not subject to liability for FEHA discrimination and retaliation to warrant dismissal of such claims against the individual defendants.").

18. Despite this unequivocal and controlling authority, Plaintiff relies upon *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138 (2021) in support of the proposition that Mr. Lingard "aided and abetted" Delta in the alleged discrimination and retaliation (Complaint ¶¶ 33, 45, and 55). In *Smith*, the California Court of Appeal noted that individual defendants could *potentially* be held individually liable for discrimination *if* the individual defendant (1) **knew** of the alleged discrimination; (2) **knew** the alleged discriminatory acts violated FEHA; and (3) gave "substantial assistance or encouragement" to the entity defendant in support of the alleged discrimination. *Smith* at 64 Cal. App. 5th at 146-147. Here, unlike *Smith* (where the Court upheld the defendant's demurrer), the Complaint is devoid of any such allegations. Notably, Mr. Lingard has never even met Plaintiff. (Lingard Decl. ¶ 3). For these reasons, *Smith* is entirely distinguishable and Plaintiff's claims for (1) disability discrimination - failure to make reasonable accommodation in violation of FEHA; (2) disability discrimination – wrongful termination in violation of FEHA; (3) retaliation in violation of FEHA are not permissible against Mr. Lingard.

### b. No Possible IIED Cause of Action Against Mr. Lingard.

19. Plaintiff has not stated and cannot state an ' IIED claim against Mr. Lingard (or any defendant) because (i) Plaintiff's IIED claim is preempted by the California Workers' Compensation Act ("WCA"); and (ii) established law confirms that the type of management decisions alleged in the Complaint do not rise to the level of "outrageous conduct beyond the bounds of human decency." *See* Cal. Lab.

Code §§ 3600-3602; *Janken v. GM Hughes Elecs.,* 46 Cal. App. 4th 55, 80 (1996).

### (i) WCA Pre-Empts Plaintiff's IIED Claim

20. Any claim for IIED will fall within the WCA, which is the exclusive remedy for injuries sustained in the course of employment. Cal. Lab. Code §§ 3600-3602; *see also, e.g. Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-714 (1994), *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal.4th 800, 812-813 (2001). Emotional distress incident to employment actions is within the scope of employment, and thus no civil action may be maintained for IIED claims. *Livitsanos v. Sup. Ct.*, 2 Cal.4th 744, 747, 752 (1992) ("claims for [IIED] are preempted by the exclusivity provisions of the workers' compensation law" because even "intentional 'misconduct' may constitute a 'normal part of the employment relationship'"); *Jersey v. John Muir Med. Ctr.*, 97 Cal. App. 4th 814, 830 (2002); *Shoemaker v. Myers*, 52 Cal.3d 1, 8-9, 25 (1990) (concluding WCA preempts claims of IIED predicated on allegations that supervisor threatened, intimidated, harassed, and ultimately terminated her employment in retaliation for complaints he lodged).

### (ii) Personnel Management Decisions Cannot Support IIED

21. To establish a claim for intentional infliction of emotional distress, Plaintiff must show that: (1) a defendant engaged in extreme and outrageous conduct; (2) a defendant intended to cause or acted with reckless disregard of the probability that it would cause Plaintiff emotional distress; (3) Plaintiff did, in fact, suffer severe emotional distress; and (4) the conduct was a substantial factor in causing Plaintiff's severe emotional distress. *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009). Even discriminatory personnel management decisions do not rise to the level of "outrageous conduct beyond the bounds of human decency." *Janken v. GM Hughes Elecs.,* 46 Cal. App. 4th 55, 80 (1996).

22. Plaintiff's "***sole allegation*** regarding Mr. Lingard in relation to this claim is that he sent her a letter regarding her employment status. (*See* Complaint ¶ 21). There is no allegation of ***any*** outrageous conduct. *(See Id.)* Therefore,

Plaintiff's allegations against Mr. Lingard, as a matter of law, are insufficient to support her claim of intentional infliction of emotional distress. *Janken*, 46 Cal. App. 4th at 80 ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."); *See also Sheppard v. Freeman,* 67 Cal. App. 4th 339, 349 (1998) ("we hold that employees, regardless of their scope of employment or personal motives, cannot be individually liable for their acts or words relating to personnel actions unless such liability arises from statute"). Moreover, as individual defendants exercising their regular job duties may not be held personally liable for FEHA discrimination or retaliation claims (as discussed above), likewise such defendants cannot be held personally liable for emotional distress arising out of such claims. *Smith v. International Brotherhood of Elec. Workers*, 109 Cal. App. 4th 1637, 1658 (2003) ("because the emotional distress claims arise out of [FEHA discrimination claims] for which [the individual defendant] cannot be held personally liable it follows he cannot be held liable for the emotional distress claims either"). Plaintiff's IIED claim, like her FEHA claims, impermissibly names Mr. Lingard when there is no legal or factual basis to support such a claim against him.

        c.    **<u>No Possible Defamation Cause of Action Against Mr. Lingard.</u>**

23. Plaintiff alleges that Mr. Lingard sent her a letter stating "we are very concerned that you have been absent since 6/10/2021 without contacting us …I am in the process of reviewing your file for continued employment. If you do not return to work or we do not hear from you soon, I have no alternative but to assume you are no longer interested in working for Delta Air Lines." (Complaint ¶ 80). Plaintiff further alleges that Mr. Lingard published this letter to a human resources employee and a department manager. (*Id.*)

24. The tort of defamation involves a non-privileged communication where "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e)

has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). Plaintiff has not and cannot 'state a defamation claim against Mr. Lingard because the alleged disclosure (assuming it occurred at all) was privileged.

25. The only communication Plaintiff alleges that Mr. Lingard "published" regarding Plaintiff was work-related and with individuals (a human resources employee and a manager) who needed to know the subject matter of the discussion because of a common business interest: employment at Delta. (*See* Complaint ¶ 80).

26. An employer has a privilege to communicate, without malice, with persons who have a "common interest" in the subject matter of the communication. Civ. C. § 47(c); *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1369 (2003); *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440 (2007) ("employer's statements to employees regarding the reasons for termination of another employee generally are privileged"); *Deaile v. Gen. Tel. Co. of California*, 40 Cal. App. 3d 841, 848 (1974) (holding statements related to the reasons for the plaintiff's forced retirement were all privileged). Any statement that Mr. Lingard (an individual who has never even met Plaintiff) allegedly made about Plaintiff's employment status to human resources and management in the course of his job is privileged. (*See* Lingard Decl., ¶ 2-3). As Plaintiff has not and cannot state a defamation claim against Mr. Lingard, Mr. Lingard is a sham defendant.

27. As Plaintiff has not and cannot state a 'cognizable claim against Mr. Lingard as a matter of law, this Court must disregard Plaintiff's claims against him for purposes of diversity jurisdiction. *See Ritchey v. UpJohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1987) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds."); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("Under California law no wrongful discharge case was stated against them…McCabe failed to state any cause of action against Moltz

///

and Ladson; their joinder to General Foods as defendants was sham; their presence did not destroy diversity.")

### 2. Complete Diversity Exists Between The Remaining Parties.

28. For diversity purposes, an individual is a "citizen" of the state in which s/he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place s/he resides with the intention to remain or to which s/he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

29. The Complaint alleges that Plaintiff is a resident of the County of Los Angeles, State of California. (Complaint ¶ 2). Accordingly, Plaintiff is a citizen of the State of California for purposes of this removal.

30. Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to be a citizen of every State ... by which it has been incorporated and of the State ... where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 78. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

31. As of the date of the filing of this action, Delta was (and remains) a corporation incorporated under the laws of the State of Delaware. [Declaration of Ashley Rangel ("Rangel Decl.") ¶ 4.] Delta's principal place of business and the location where its officers direct, control, and coordinate its corporate activities was, at the time of the filing of this action, and still is, in Atlanta, Georgia. (Rangel Decl. ¶ 5-6). Therefore, at all material times, Delta has been a citizen of the State of

Georgia and Delaware with its principal place of business in the state of Georgia. Delta is not now (nor has it been at any relevant time to this action) a citizen of the State of California, as it is neither incorporated in California nor does it maintain its principal place of business in California. (Rangel ¶ 6).

32. Because Plaintiff is a citizen of the State of California and Delta is a citizen of the States of Georgia and Delaware, complete diversity exists pursuant to 28 U.S.C. §§1332(a).

**B.     The Amount-in-Controversy Requirement is Satisfied.**

33. From the allegations of the Complaint, it is evident that the amount-in-controversy exceeds $75,000, as required by 28 U.S.C. section 1332(a). Where, as here, the complaint does not specify a particular amount of damages, the removing defendant need only establish the amount in controversy by a preponderance of evidence, *i.e.*, that it is more likely than not that the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).[1] A defendant may show the amount in controversy "by setting forth the *facts* in controversy ... that support a finding of the requisite amount." *Luckett v. Delta Airlines* [sic]*, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). In determining whether the jurisdictional minimum is met, the Court considers all recoverable damages, including emotional distress damages, punitive damages, statutory penalties, and attorneys' fees where recoverable by statute. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977); *Galt*

---

[1] An evidentiary showing is needed only if the amount in controversy alleged in the removal notice is challenged. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "A removing defendant … need only allege facts sufficient to establish a party's citizenship in its notice of removal; it need not adduce evidence supporting those facts." *Zeppeiro v. Green Tree Servicing, LLC*, 2014 WL 12596312, at *6 (C.D. Cal. June 16, 2014); see also *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (A notice of removal is sufficient "if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 USC § 1332. …").

*G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Anthony v. Security Pac. Fin'l Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996).

34.  Plaintiff alleges that Delta's conduct caused her "substantial losses in earnings, and other employment and retirement benefits and has suffered and continues to suffer embarrassment, humiliation and mental anguish all to her damage" and that she is also entitled to penalties, punitive damages, attorney's fees, and injunctive relief, and reinstatement. (See *e.g.* Complaint ¶¶ 34, 35, Prayer for Relief, ¶¶ 1-7).

35.  It is "more likely than not" that, if Plaintiff prevails on each of her causes of action and recovers the damages that he seeks for each claim, Plaintiff will recover more than $75,000.[2]  *See Sanchez*, 102 F.3d at 403-404.  Plaintiff alleges that her employment was terminated on or about July 1, 2021 and that she earned $22.05 per hour. (Complaint ¶ 23-24; *see* Rangel Decl. ¶ 3.)  Assuming Plaintiff would have continued working at her final pay rate, lost wages to date would be at least $22,932 (approximately 26 weeks since July 1, 2021 x $882 per week).  Because this case is still in the early pleading stage, it will not be ready for trial for at least another year, at which point Plaintiff's alleged lost income claim will have increased by an additional approximately $45,864.

36.  The above calculation also does not include additional alleged lost future wages or lost benefits.  If those recoveries were included in the above calculation, that number would be significantly higher.

37.  While the details of Plaintiff's alleged emotional distress damages are not pled in the Complaint, Plaintiff claims that she has suffered and continues to suffer severe emotional distress.  (*See* Complaint, ¶¶ 34-35). In cases alleging

---

[2] By estimating the amounts Plaintiff may recover if she prevails, Delta does not concede that Plaintiff will prevail on any of her claims or that, if she prevails, she is entitled to damages in any particular amount or at all. Delta reserves the full right to dispute Plaintiff's claims with respect to both liability and damages.

1 discrimination and wrongful termination, the emotional distress damages award alone
2 often exceeds the $75,000 amount in controversy requirement.  In *Elliott v. City of*
3 *Gardena*, 2001 WL 1255712 (Los Angeles County Superior Court, July 23, 2001),
4 the jury awarded the plaintiff in a discrimination case $1,650,000 where the plaintiff's
5 only claimed injury was emotional distress damages.  In *Comey v. County of Los*
6 *Angeles*, 2007 WL 3022474 (Los Angeles County Superior Court, Aug. 15, 2007), the
7 jury awarded a plaintiff in a discrimination case $768,286, of which $100,000 was for
8 non-economic damages.  *See also Conney v. University of California Regents*, 2004
9 WL 1969934 (Los Angeles County Superior Court, July 27, 2004) ($300,000 in past
10 non-economic damages and $600,000 in future non-economic damages awarded to
11 plaintiff claiming discrimination and retaliation).  These awards demonstrate that, for
12 diversity purposes, the value of the emotional distress facet of Plaintiff's claimed
13 damages alone exceeds the $75,000 amount in controversy requirement.

14          38.     Furthermore, in these types of discrimination cases, attorneys' fees
15 alone are often more than $75,000.  *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447,
16 449-50 (S.D. Cal. 1995) (amount in controversy includes statutory or contractual
17 attorneys' fees); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982)
18 (amount in controversy includes potential recovery of attorneys' fees which assumes
19 that plaintiff prevails on underlying claims); *Koehler v. Imperial Capital Bank*, 2005
20 WL 3981235 (California arbitration award, December 30, 2005) (attorneys' fees and
21 costs of $438,707 awarded in addition to award of $508,558 for discrimination,
22 violation of public policy, wrongful termination, and retaliation); *See Jadwin v. Cty.*
23 *of Kern*, 767 F.Supp.2d 1069, 1141 (E.D. Cal. 2011) (awarding prevailing plaintiff
24 under the FEHA $573,700 in attorneys' fees); *Noyes v. Kelly Serv., Inc.*, No. 2:02-
25 cv-2685, 2008 WL 3154681 (awarding plaintiff $765,972.70 in attorneys' fees in a
26 FEHA action); *Hous. Rights Ctr. v. Sterling*, No. CV-03-859, 2005 U.S. Dist. LEXIS
27 31872, at *29 (C.D. Cal. Nov. 2, 2005) (awarding prevailing plaintiff in FEHA
28 action $4,923,554.75 in attorneys' fees); *Vo v. Las Virgenes Municipal Water Dist.*,

79 Cal. App. 4th 440, 442 (Cal App. 2d Dist. 2000) (affirming award of $470,000 in attorneys' fees to plaintiff in a FEHA action). As these cases demonstrate, an award of attorneys' fees in an employment discrimination case puts the amount in controversy at an amount greater than $75,000. *Vasquez v. Arvato Digital Serv., LLC*, No. CV-11-02836, 2011 U.S. Dist. LEXIS 69154, at *9 (C.D. Cal. June 27, 2011); *Rivera v. Costco Wholesale Corp.*, No. C-08-02202, 2008 U.S. Dist. LEXIS 58610, at *8-11 (N.D. Cal. July 11, 2008) (amount in controversy exceeded $75,000 where plaintiff's lost wages equaled $52,000 and plaintiff also sought emotional distress damages, punitive damages, and attorneys' fees).

39. Finally, Plaintiff has requested an award of punitive damages, which must be included in calculating the amount placed in controversy. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240-41 (1943); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action."); *Romo v. FFG Ins. Co.*, 397 F.Supp.2d 1237, 1240 (C.D. Cal. 2005) (where authorized, punitive damages are considered as part of the amount in controversy in meeting the prerequisite for diversity jurisdiction). There are numerous employment discrimination cases in which a jury awarded substantial punitive damages to a prevailing plaintiff under the FEHA. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, (9th Cir. 1994) (affirming punitive damages award of $833,434.80 in gender discrimination case under FEHA); *Noyes v. Kelly Serv., Inc.*, No. 2:02-cv-2685, 2008 WL 3154681, at *2 (E.D. Cal. Aug. 4, 2008) (jury verdict of $5.9 million in punitive damages in employment discrimination case); *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (citing *Prasad v. University of Cal. Davis Med. Ctr.*, JVR No. 802857 ($60,000 punitive damage award); *Carrol v. Interstate Brands Corp. dba Wonderbread, dba Hostess & dba Dolly Madison, et al.*, Cal. Super. Ct. for the County of San Francisco Case No. 995728, 1 C.E.L.M. 68 (Sept. 2000) ($121,000,000 punitive damage award); *Lane v. Hughes Aircraft Co.*, JVR No. 801112 ($40,000,000 punitive damage award));

*Stephens v. Coldwell Banker Com. Grp., Inc.,* 199 Cal. App. 3d 1394 (1988), disapp'd on other grounds by *White v. Ultramar*, 21 Cal. 4th 563, 575 n. 4 (1999) (affirming award of $200,000 in punitive damages in case where plaintiff alleged he was demoted because of his age); *see White v. Ultramar*, 21 Cal. 4th 563, 568 (1999) (affirming award of $300,000 in case where plaintiff was retaliated against for testifying at unemployment hearing); *Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 418 (2007) (affirming award of $1 million in punitive damages to plaintiff when defendant retaliated against plaintiff for filing an age discrimination complaint); *Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1423 (Cal. App. 4th Dist. 1993) (awarding plaintiff $500,000 in punitive damages when he was terminated for complaining about unlawful conduct).

40.  Given Plaintiff seeks the above-referenced forms of damages, if Plaintiff is successful on even one of the claims asserted, her potential recovery will exceed the jurisdictional minimum of $75,000. Other courts have found the jurisdictional amount satisfied in employment lawsuits where the specified damages were much less than the damages Plaintiff has specified here. *Simmons,* 209 F. Supp. 2d at 1031 (jurisdictional minimum was satisfied in an employment discrimination case where plaintiff's lost wages totaled $25,600, but plaintiff also sought unspecified amounts in attorney's fees, punitive damages, and emotional distress damages); *White v. FCI USA, Inc.*, 319 F.3d 672, 675-76 (5th Cir. 2003) (jurisdictional minimum was satisfied in a wrongful termination case even though Plaintiff had only specified $13,000 in damages from lost income because plaintiff also sought unspecified amounts for loss of pay, impaired earning capacity, pre-judgment interest, court costs, and emotional distress, attorneys' fees and punitive damages); *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1996) (former $50,000 jurisdictional minimum was met where the plaintiff sought approximately $30,000 for violation of contract, as well as additional tort damages and punitive damages).

41. Based on the foregoing, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Accordingly, Delta may remove the action to this Court pursuant to the provisions of 28 U.S.C. § 1441(b).

## V. <u>REMOVAL IS PROPER BECAUSE THE ALLEGED IN-FORUM DEFENDANTS HAVE NOT BEEN PROPERLY JOINED AND SERVED</u>

42. To date, Mr. Lingard has not been served, and therefore removal is appropriate for this additional reason. (Lingard Decl., ¶ 4); *See, e.g.*, *Dechow v. Gilead Scis., Inc.*, 358 F.Supp.3d 1051, 1054 (C.D. Cal. 2019) ("Congress did not intend to prohibit removal by in-state defendants who have not been properly joined and served."); *Zirkin v. Shandy Media, Inc.*, 2019 WL 626138, at *4 (C.D. Cal. Feb. 14, 2019) (denying remand motion where forum defendant had not been served); *Regal Stone Ltd. v. Longs Drug Stores California, L.L.C.*, 881 F.Supp.2d 1123, 1129 (N.D. Cal. 2012) ("The Court retains removal jurisdiction over this matter notwithstanding the presence of an unserved California citizen.").

43. 28 U.S.C. Section 1441(b)(1) provides that: "A civil action otherwise removable solely on the basis of the jurisdiction under [28 U.S.C. section 1332(a)] may not be removed if any of the parties in interest **properly joined and served as defendants** is a citizen of the State in which such action is brought." (Emphasis added.) As the Third Circuit Court of Appeals observed in interpreting Section 1441, "Congress' inclusion of the phrase 'properly joined and served' addresses a specific problem—fraudulent joinder by a plaintiff—with a bright-line rule. Permitting removal on the facts of this case does not contravene the apparent purpose to prohibit that particular tactic." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153 (3d Cir. 2018), *reh'g denied* (Sept. 17, 2018) (affirming denial of remand motion); *contra*, *Gonzalez v. J.S. Paluch Co.*, 2013 WL 100210, at *3 (C.D. Cal. Jan. 7, 2013) (granting remand motion where in-forum defendant had not yet been served).

///

44. Indeed, earlier cases supporting remand focus on the policy of providing plaintiffs with adequate opportunity to serve a defendant. *Pullman Co. v. Jenkins*, 305 U.S. 534, 540–41 (1939) (affirming remand but noting: "Where there is a non-separable controversy with respect to several non-resident defendants, one of them may remove the cause, although the other defendants have not been served with process and have not appeared. … In such a case there is diversity of citizenship, and the reason for the rule is stated to be that the defendant not served may never be served, or may be served after the time has expired for the defendant who has been served to apply for a removal, and unless the latter can make an effective application alone, her right to removal may be lost."); *Stiny v. Northrop Grumman Sys. Corp.*, 2017 WL 787114, at *1 (C.D. Cal. Mar. 1, 2017) (remanding case where, two days before removal, plaintiff named three California citizens as defendants and failed to notify the removing defendant about the amendment until after removal of the case).

45. As Mr. Lingard has not been "properly joined and served" within the meaning of 28 U.S.C. section 1441(b)(1), removal is permitted. Removal of this Action "does not contravene the apparent purpose" of section 1441(b)(1). *Encompass Ins. Co.*, 902 F.3d at 153.

## VI. <u>CONCLUSION</u>

46. Based on the foregoing, this Court has jurisdiction based on diversity of citizenship pursuant to U.S.C. sections 1332(a) and 1441(a). Plaintiff is not a citizen of the same state as Delta, Doe defendants are disregarded for the purposes of diversity jurisdiction and Mr. Lingard is a sham defendant. In addition, the claims of Plaintiff place more than $75,000 in controversy. Thus, removal to federal court is proper.

47. In the event this Court has a question regarding the propriety of this Notice of Removal, Delta requests that the Court issue an Order to Show Cause so that Delta may have the opportunity to more fully brief the basis for this removal, and/or order Plaintiff to file a statement of damages and/or citizenship.

48. WHEREFORE, Delta gives notice that the above-described action in the Superior Court of the State of California for the County of Los Angeles – Central District is removed to this Court.

Dated: January 3, 2022            CDF LABOR LAW LLP


By: */s/ Dawn M. Irizarry*
      Dawn M. Irizarry
Attorneys for Defendant
DELTA AIR LINES, INC.,
(erroneously sued as
"DELTA AIRLINES, INC.")